BRETT L. TOLMAN, United States Attorney (#8821)
JEANNETTE F. SWENT, Assistant United States Attorney (#6043)
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

KAREN K. RICHARDSON, Senior Counsel
JOHN R. COLEMAN, Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 6118
Washington, D.C. 20001
Telephone: (202) 514-4505

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| LAURA CONROY, | : | Case No. 2:06CV 00867 DB |
|     Plaintiff, | : | |
| vs. | : | **DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER** |
| EDWARD T. SCHAFER, | : | |
|   [Secretary of Agriculture, United States Department of Agriculture] | : | Honorable Dee Benson |
|     Defendant. | : | Honorable Brooke C. Wells |

The confidentiality of the communications between defendant's counsel and defendant's former employees at issue in this motion is essential to defendant's ability to respond to and counter plaintiff's allegations in this Title VII case. As recognized by Chief Justice Burger, uniform circuit court authority and many district court opinions, the principles underlying the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), compel the conclusion that the attorney-client privilege extends to communications between an

- 1 -

organization's counsel and the organization's former employees regarding the former employee's knowledge gained while employed by the organization. Accordingly, defendant's motion for a protective order forbidding plaintiff's inquiry into confidential communications between defendant's counsel and defendant's former employees relating to the former employees' knowledge gained while employed with defendant, including confidential communications between defendant's counsel and defendant's former employees relating to the former employees' testimony regarding such knowledge, should be granted.

## BACKGROUND

In this case, plaintiff alleges that her 2001 non-selection for a position in the Regional Office of the United States Forest Service located in Ogden, Utah was on account of her sex.[1] The complaint in this case was filed on October 10, 2006 and service was perfected in March, 2007. Defendant's counsel noticed their appearances in March, 2007. In preparing to defend this civil action, defendant's counsel could not communicate with the named defendant, who is named in his official capacity as the Secretary of Agriculture and does not have any personal knowledge regarding this case. Nor could defendant's counsel confer with the United States Forest Service or the United States Department of Agriculture, which are artificial creatures of the law and not individuals capable of communicating information. Instead, defendant communicated with those individuals whose official acts as employees of the United States Forest Service are the subject of this lawsuit. Although the United States Department of Agriculture would bear any liability in this action, it is the acts of these individuals that plaintiff

---

[1]Plaintiff also alleges that the decision to advertise the same position in 2004 solely in professional job series was in retaliation for her complaint surrounding her 2001 non-selection.

alleges are discriminatory. It is only through communications with these individuals that defendant's counsel can prepare its case, and it is only through the testimony of these individuals that defendant can present its defense.

Over the past seven years, many of the key officials involved in the selection decision in 2001 have retired from the Forest Service. For example, a review panel of four individuals formed to evaluate applicants for the position and recommend the top three candidates to the selecting official, including two individuals, Jack McDonald and Mary Jean Brachman, who have since retired from the Forest Service.[2] Another individual variously referred to as a fifth member of the panel or as the recommending official who also participated in the panel, Tamara Hanan, is also retired from the Forest Service.[3] Another individual, Larry Larson, who initially served as the position's second line supervisor and was involved in the development of the position's job duties and discussions regarding the selection has retired from the Forest Service. Finally, the selecting official who ultimately chose the selectee over plaintiff, Christopher Pyron, is retired from the Forest Service.[4]

During the course of their representation of defendant, defendant's counsel has had

---

[2]On Thursday, April 3, 2008, during the depositions of Mr. McDonald and Mrs. Brachman, defendant's counsel objected to certain questions posed by plaintiff's counsel on the ground that such questions sought information protected from disclosure by the attorney-client privilege. Defendant's counsel instructed each witness to answer the question only to the extent he or she could do so without revealing the substance of confidential communications between defendant's counsel and the witness. The privilege was asserted on behalf of the defendant, and not on behalf of the witness.

[3]Ms. Hanan has recently begun working on a contract basis for a different agency within the Department of Agriculture. Ms. Hanan's deposition is tentatively scheduled to be conducted in Washington, D.C. during the week of April 21, 2008.

[4]Mr. Pyron is scheduled to be deposed in Arizona on Thursday, April 10, 2008.

numerous discussions with the individuals identified above regarding acts they performed in their official capacity while they were still employed in the Forest Service. In addition, defendant's counsel met with both Mr. McDonald and Ms. Brachman prior to their respective depositions to discuss their likely testimony, all of which concerned events occurring during their employment. Because of the centrality of these retired individuals in the selection decision, defendant's counsel could neither prepare nor present defendant's case without communicating with these individuals. The instant motion squarely presents the issue of whether these communications are protected from discovery by the attorney-client privilege.

## ARGUMENT

With exceptions not pertinent to the instant motion, "[t]he examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence." Accordingly, defendant's claim of attorney-client privilege is governed by Fed. R. Evid. 501, which provides that "[t]he privilege of a witness, person, government, state, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." By using this language, Congress made clear that courts addressing claims of privilege must utilize the common law's methodology of applying settled principles to varying conditions in order to serve the underlying purpose of the privilege. *See Jaffe v. Redmond*, 518 U.S. 1, 8 (1996).

**I.    Principles Underlying the Supreme Court's Decision in *Upjohn* Govern Defendant's Claim of Attorney-Client Privilege**

The principles that govern the instant motion were set forth in the Supreme Court's seminal decision on the scope of the attorney-client privilege as it applies to employees of an organization, *Upjohn Co. v. United States*, 449 U.S. 383 (1981). At issue in *Upjohn* was

whether, when an organization is a party to litigation, the attorney-client privilege extends not only to conversations between the organization's counsel and the organization's "control group," defined as senior management, but also to conversations between the organization's counsel and all of the organization's employees with relevant knowledge. *Id.* at 388-89. The Supreme Court's rejection of the limitation of the attorney-client privilege to the "control group" rested on both (1) the purpose of the privilege, and (2) the special nature of an organizational party. These same principles necessarily extend the holding in *Upjohn* to confidential conversations with former employees about relevant knowledge gained while still employed with an organizational defendant.

According to the Supreme Court, the purpose of the attorney-client privilege is "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390 (citing *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Thus, by "'encourag[ing] clients to make full disclosure to their attorneys,'"[5] the attorney-client privilege "facilitates the full development of facts essential to proper representation" and enables an attorney to satisfy his ethical responsibility to "be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system." *Id.* at 391 (citing ABA Code of Professional Responsibility, Ethical Consideration 4-1). In short, the privilege's "purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* at 389. The purpose of the

---

[5]*Id.* at 389 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

attorney-client privilege recognized in *Upjohn* has been repeatedly reaffirmed by both the Supreme Court and the Tenth Circuit.[6]

With this purpose in mind, the Supreme Court addressed the question of how the privilege applies to an organizational defendant. It recognized that although the application of the attorney-client privilege to an organizational party is more complicated than the application of the privilege to an individual party, organizations, including government agencies, are still entitled to the privilege's full protection.[7] Of course, because an organization is "an artificial creature of the law, not an individual," *Upjohn*, 449 U.S. at 389-90, an organization's attorney-client privilege must necessarily apply to communications between the attorney and actual individuals. The question presented in *Upjohn*, and presented again by the instant motion, is which individuals.

Perhaps mistakenly relying on the name of the privilege (attorney-*client*), the "control group" test limited the privilege to communications with those individuals who "possess an identity analogous to the corporation as a whole." *Id.* at 390 (quoting *United States v. Upjohn*,

---

[6]*See, e.g., Jaffee*, 518 U.S. at 11 ("the purpose of the attorney-client privilege is to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"); *In re Qwest Comm. Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) ("The privilege serves the client's need for legal advice, but it also serves the attorney's need to receive complete information in order to give the proper advice.").

[7]*See Upjohn*, 449 U.S. at 389-91; *see also* Fed. R. Evid. 501, Note Accompanying 1974 Enactment ("The words 'person, *government*, State, or political subdivision thereof' were added by the Committed to the lone term 'witness' used in Rule 26 to make clear that, as under present law, not only witnesses may have privileges.") (emphasis added). To be clear, the privilege being asserted belongs to the defendant, not to the witnesses.

600 F.2d 1223, 1226 (6th Cir. 1979)).[8] The Supreme Court rejected this limitation because it "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Id.* at 392. As the Supreme Court recognized, "[m]iddle-level – and indeed lower-level – employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Upjohn*, 449 U.S. at 391. Therefore, limiting the privilege to only those senior level officers who "possess an identity analogous to the corporation as a whole" would present an attorney representing an organization with an untenable "Hobson's choice" between attempting to gather information from individuals without the promise of confidentiality or not being able to determine what happened. *Id.* at 392 (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 608-09 (8th Cir. 1978)). With these facts in mind, the Supreme Court held that confidential communications between an employee and organizational counsel would be protected by the attorney-client privilege so long as they "concerned matters within the scope of the employee's corporate duties." *Id.* at 394.

The principles underlying the Supreme Court's holding in *Upjohn* clearly govern

---

[8]Plaintiff's counsel citation during the brief telephone conference on April 3, 2008, to defendant's counsel's statement that he had no authority to compel the testimony of former employees reflects similar confusion. Rules 30 and 37 of the Federal Rules of Civil Procedure clearly limit those witnesses who may be "noticed" for a deposition to "a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)." Fed. R. Civ. P. 37(d)(1)(A). Thus, defendant's statement, based on these rules, that plaintiff would have to compel the former employees testimony through a subpoena issued pursuant to Rule 45 has no bearing on the applicability of the attorney-client privilege to communications between defendant's counsel and its former employees.

defendant's motion for a protective order. *Upjohn* makes clear that the application of the privilege is not governed by the relationship of the individual and defendant's counsel at the time of the communication, but the relationship of the individual with the defendant during the time of the relevant events that form the subject matter of the communications. Indeed, although the Supreme Court declined to address this issue because it had not been addressed by the lower courts, *see id.* at 394 n.3, Chief Justice Burger, concurring in the judgment, recognized that the principles underlying the Court's opinion would apply equally to communications between counsel and a former employee. As Chief Justice Burger stated, "a communication is privileged at least when, as here, an employee *or former employee* speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment," and the communications were intended "to assist counsel in performing any of the following functions: (a) evaluating whether the employee's conduct has bound or would bind the corporation; (b) assessing the legal consequences, if any, of that conduct; or (c) formulating appropriate legal responses to actions that have been or may be taken by others with regard to that conduct." *Id.* at 403 (Burger, C.J., concurring) (emphasis added).

II.  **Uniform Circuit Authority Recognizes that the Attorney-Client Privilege Applies to Confidential Communications Between Defendant's Counsel and Defendant's Former Employees**

The Supreme Court has not revisited the issue it left open in *Upjohn*, but the only two Circuit Courts of Appeal to consider the issue have held that communications that would otherwise be subject to the attorney-client privilege do not lose the privilege's protection simply because they are between an organization's counsel and an organization's former employee. Thus, in *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d

1355, 1361 (9th Cir. 1981), *cert. denied*, 455 U.S. 990 (1982), the Ninth Circuit considered whether company counsel's pre-deposition "orientation" of unrepresented employees, both current and former, was a valid ground for disqualification of company counsel from representing the current and former employees of the company. *Id.* at 1359. The district court had disqualified company counsel, in part, based on its concern that company counsel's representation of the employees would prevent plaintiffs' counsel from questioning the former employees about discussions that occurred during the former employees' preparation for their deposition testimony. *Id.* On appeal, company counsel responded to this concern by noting that *Upjohn* extended the attorney-client privilege to their conversations with the former employees irregardless of whether they have a formal attorney-client relationship with the former employees. *Id.* at 1360. The Ninth Circuit agreed, holding that "[a]lthough *Upjohn* was specifically limited to current employees, the same rationale applies to the ex-employees (and current employees) involved in this case. Former employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties." *Id.* at 1361. Accordingly, "plaintiffs' attorneys may not discover what transpired in the 'orientation session' whether or not the defense attorneys act as counsel for the witnesses at the deposition." *See also Admiral Ins. Co. v. U.S. Dist. Court for Dist. Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989) (reaffirming "that the *Upjohn* rationale necessarily extended the privilege to former corporate employees.").

The only other circuit to consider the issue has come to the same conclusion. In *In re Allen*, 106 F.3d 582, 605 (4th Cir. 1997), the Fourth Circuit analyzed the issue at length. It noted both the Supreme Court's reservation of the issue and Chief Justice Burger's stated view "that

the privilege should apply to communications by former employees," and observed that "[m]ost lower courts have followed the Chief Justice's reasoning and granted the privilege to communications between a client's counsel and the client's former employees." *Id.* at 605-06 (citing cases). The Fourth Circuit also noted that "[t]hose courts that have denied the privilege to communications between the client's attorney and former employees have generally been following state law or concluded that the former employee had ceased being employed *before* the relevant conduct occurred." *Id.* at 606 n.14 (citing cases). Accordingly, it held that, "[i]n light of the purpose underlying the privilege, . . . the analysis applied by the Supreme Court in *Upjohn* to determine which employees fall within the scope of the privilege applies equally to former employees." *Id.* at 606.

## III. District Court Authority Also Supports the Application of the Attorney-Client Privilege to Confidential Communications with Former Employees

District Court opinions to consider the issue have likewise recognized that the principles announced in *Upjohn* clearly extend to former employees. Thus, in *Cool v. BorgWarner Diversified Transmission Prod., Inc.,* Case No. IP 02-960-C(B/S), 2003 WL 23009017 (S. D. Ind. Oct. 29, 2003), the district court considered "whether conversations between counsel for Defendant BorgWarner Diversified Transmission Products, Inc. ("BorgWarner") and former BorgWarner Director of Human Resources Charlene Giles that occurred prior to Ms. Giles deposition testimony in this case are protected by the attorney client privilege." *Id.* at *1. The district court explained its reason for extending the privilege to such predeposition communications as follows:

> While Chief Justice Burger did not explain why he fashioned a rule that applied to communications with both current and former employees, we agree with the Fourth Circuit that doing so is consistent with the purpose of the attorney-client

> privilege – to permit an attorney to gather the information necessary to advise his or her client. *In re Allen*, 106 F.3d at 606 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)) ("The Supreme Court has explained that the attorney-client privilege 'rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.'"). Because a corporation acts through its employees, in the case of a corporate client the information counsel needs typically must be obtained from those of the corporation's employees who were involved in the actions or incidents from which the legal issue at hand arose. Sometimes, as in this case, a person with critical knowledge of the relevant facts is no longer employed by the corporation, and in order to represent his or her client effectively the corporation's counsel must seek information from the former employee. We hold that when, as here, such information is communicated by the former employee to the corporation's counsel, those communications are protected by the attorney-client privilege.

*Id.* at *2.

The logic of this holding has been followed in numerous other district court cases as well. *See, e.g., U.S. v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006) ("The Supreme Court's decision in *Upjohn* holds that the attorney-client privilege shields . . . confidential communications between attorneys and the officers, employees, and former employees of a corporate client made for the purpose of obtaining professional legal advice. . . ."); *Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 112 (S.D.N.Y. 2005) ("Virtually all courts hold that communications between company counsel and former company employees are privileged if they concern information obtained during the course of employment.") (citing *Surles v. Air France*, Case No. 00-cv-5004, 2001 WL 815522, at *6 (S.D.N.Y. July 19, 2001)); *United States ex rel. Hunt v. Merck-Medco Managed Care*, LLC, 340 F. Supp. 2d 554, 558 (E.D. Pa. 2004) (extending the attorney-client privilege to communications relating to "conduct or knowledge during [the former employee's] employment with [corporate defendant]."); *Miramar Constr. Co. v. Home Depot, Inc.*, 167 F. Supp. 2d 182, 184-85 (D.P.R. 2001) (extending Upjohn to former as

well as current employees); *Peralta v. Cendant Corp.*, 190 F.R.D. 38 (D. Conn. 1999) (holding that corporate counsel's predeposition communications with a former employee related to the underlying facts of the case are privileged); *In re M&L Business Mach. Co., Inc.*, 161 B.R. 689, 692-93 (D. Colo. 1993); *Command Transp., Inc. v. Y.S. Line (USA) Corp.*, 116 F.R.D. 94, 96-97 (D. Mass. 1987) (applying *Upjohn* to hold that the attorney-client privilege applies to communications with former employee).

### IV. Application of the Privilege is Appropriate to Defendant's Counsel's Conversations with Defendant's Former Employees

Defendant's motion for a protective order seeks to protect "confidential communications between defendant's counsel and defendant's former employees relating to the former employees' knowledge gained while employed with defendant, including confidential communications between defendant's counsel and defendant's former employees relating to the former employees' testimony regarding such knowledge." As the foregoing case law illustrates, this request is clearly consistent with "the principles of the common law as they [have been] interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. Many of the key individuals involved in the events underlying this case no longer work for the Forest Service. But, it is these individuals' intent when they acted in their official capacity as employees of the Forest Service that is at issue in this case. Defendant could not prepare its case without communicating with these individuals. Defendant cannot present its case without these individuals' testimony. Defendant's counsel's conversations with these former employees have been at the request of Defendant's Office of General Counsel or defendant's counsel acting on behalf of defendant. These confidential communications have concerned matters within the scope of the former employees' duties and the former employees

were aware that these confidential communications were for the purpose of defendant's counsel's representation of defendant in this matter. Thus, these communications are entitled to the full protection of the attorney-client privilege.

To hold otherwise would undermine the purpose of the privilege by unfairly depriving defendant of the privilege's benefits, by discouraging the full development of the facts by defendant's counsel, and by encouraging parties considering litigation against an organization to wait for the retirement of key individuals before bringing suit. Plaintiff cannot present any valid reason for denying the privilege's applicability. As the Supreme Court recognized in *Upjohn*, preventing disclosure of confidential communications between defendant's counsel and defendant's former employees will not (and did not) prevent plaintiff's counsel from questioning former employees about the relevant underlying facts. *Id.* at 395-96. Defendant's motion for a protective order must therefore be granted.

## **CONCLUSION**

For the reasons set forth above, defendant respectfully requests that the Court grant defendant's motion for a protective order.

Respectfully submitted this 7th day of April, 2008,

                        JEFFREY S. BUCHOLTZ
                        Acting Assistant Attorney General

| | |
|---|---|
| STEVEN C. BRAMMER | BRETT L. TOLMAN |
| HEATHER HINTON-TAYLOR | United States Attorney |
| Attorney-Advisors | |
| U.S. Department of Agriculture | JEANNETTE F. SWENT |
| 1400 Independence Ave. | Assistant United States Attorney, (#6043) |
| Room 3312-S | |
| Washington D.C. 20250-1400 | STUART A. LICHT |
| | Assistant Director |

s/ John R. Coleman
KAREN K. RICHARDSON
Senior Counsel
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W., Rm 6118
Washington, D.C. 20001
Telephone: (202) 514-4505
Facsimile: (202) 616-8460
Email: John.Coleman3@usdoj.gov